IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IGNACIO GREG LOPEZ,

    Plaintiff,

v.  Civ. No. 16-552 SCY

NANCY A BERRYHILL,[1]
*Acting Commissioner of the
Social Security Administration*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Ignacio Greg Lopez's Motion to Reverse and Remand to Agency for a Rehearing with Supporting Memorandum. Doc. 18. An Administrative Law Judge (ALJ) found Plaintiff not disabled. Plaintiff argues (1) the ALJ committed error by not applying the correct legal standards at step two of the Sequential Evaluation Process; (2) Plaintiff's determined residual functioning capacity cannot stand in light of information from Dr. John R. Vigil, whose testimony the Appeals Council made part of the record; and (3) the ALJ failed to apply the correct legal analysis at step four and substantial evidence does not support the ALJ's determination that Plaintiff can return to past relevant work. Doc. 18 at 1. For the reasons below, the Court finds that Plaintiff's arguments are not well-taken and **DENIES** Plaintiff's motion.

**I.      BACKGROUND**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on May 17, 2013 (AR 100) and a Title XVI application for supplemental security

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

1

income on June 5, 2013 (AR 101), in which he alleged disability beginning August 28, 2012 (AR 80, 90). ALJ Myriam C. Fernandez Rice held a hearing on November 12, 2015. AR 25. At some point, Plaintiff's counsel referred Plaintiff to Dr. Vigil for an independent medical evaluation and functional evaluation for disability. AR 493. On December 3, 2015, Plaintiff requested the ALJ to keep the record open to receive information from Dr. Vigil[2] (AR 41), who examined Plaintiff on December 7, 2015 (AR 493). As part of her January 5, 2016 decision, the ALJ denied Plaintiff's request to keep the matter open and receive Dr. Vigil's evaluation. AR 26. On April 7, 2016, the Appeals Council made Dr. Vigil's evaluation part of the record, but denied Plaintiff's request for review. AR 5, 8.

Because the parties are familiar with the record in this case and have set forth Plaintiff's medical history in their briefs, the Court will not repeat that medical history. The Court, however, has reviewed Plaintiff's entire medical history and will cite to portions of it throughout this Opinion.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to

---

[2] The ALJ wrote that this request occurred on December 7, 2015. AR 26. The letter Plaintiff sent was dated December 3, 2015 and had the name of ALJ Myriam Fernandez-Rice on the address line, but the name of Judge Farris in the salutation. This may have delayed ALJ Fernandez-Rice's receipt of the letter. In any event, the exact date of the request is immaterial.

determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v.*

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III.     ANALYSIS

Plaintiff raises a number of issues for review. First, Plaintiff argues that the ALJ did not apply the correct legal standards at step two of the sequential evaluation process. Doc. 18 at 17-19. Second, Plaintiff contends that the medical source statement of examining physician Dr. John Vigil undercuts the ALJ's RFC determination. *Id*. at 19-23. Third, Plaintiff argues that the ALJ's finding that Plaintiff is capable of returning to his past relevant work is not supported by

substantial evidence or in compliance with the appropriate legal standards. *Id*. at 23-26. The Court will consider these issues in turn.

    A.  <u>The ALJ Applied the Correct Legal Standards at Step Two</u>

Plaintiff argues that, in rejecting Plaintiff's claim of urinary incontinence[3] as a severe impairment, the ALJ did not apply the correct legal standards at step two of the Sequential Evaluation Process. *See* Doc. 18 at 17-19. At step two, an ALJ must consider whether an impairment is severe. *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citing 20 C.F.R. § 416.920(a)(4)(ii)). "An impairment is 'severe' if it 'significantly limits [a claimant's] physical or mental ability to do basic work activities.' 20 C.F.R. § 404.1520(c). A claimant must make only a *de minimis* showing to advance beyond step two." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Nonetheless, "while the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

Plaintiff asserts that he "presented repeated diagnosis of incontinence." Doc. 18 at 17. He then cites to two references Dr. Jennifer Pentecost made to urinary incontinence. The first is a simple notation that listed "Bladder Incontinence" under the heading "Diagnosis" in connection with the Family Practice Progress Notes Dr. Penecost signed on April 4, 2013. AR 311. Notably, Dr. Penecost never listed incontinence as a chief complaint of Plaintiff and did not list incontinence as a diagnosis on other progress notes. *See* AR 307 (not listing incontinence under "Diagnosis" section of Family Practice Progress Notes signed May 12, 2013). Further, although a CT scan was performed on February 21, 2013, to "[f]ollow up [on] suspicious inferior pole right renal cyst identified on ultrasound" which included, in part, "enhancing excretion phases

---

[3] Although Plaintiff refers to incontinence generally, he only cites to medical records that relate to urinary incontinence.

5

for evaluation of the kidneys", the result of this examination was "unremarkable."[4] AR 313. Nor do records from Dr. Pentecost indicate that Plaintiff had urinary incontinence to such a degree as to warrant any type of treatment or action. Rather, the records indicate that, as reflected in the second record from Dr. Pentecost that Plaintiff cites to, Plaintiff's issues with urinary incontinence consisted of it waking him up "1-2x/night." AR 320. In short, nothing in the records from Dr. Pentecost indicates that urinary incontinence limited Plaintiff's ability to do basic work activities.

Plaintiff next cites to records from Dr. John Vigil, and specifically to Dr. Vigil's statement that he was "concerned about a possible cauda equine syndrome which may be contributing . . . to his incontinence." Doc. 18 at 17 (citing AR 497-98). There are a number of problems with Plaintiff's reliance on this record from Dr. Vigil to support his step two argument. First, Dr. Vigil did not conclude that Plaintiff had cauda equine syndrome; instead, he indicated he was *concerned* about it and opined that it *may* be contributing to incontinence. Further, he followed this statement with the statement that, "[t]his would be a surgical emergency which should be evaluated and treated urgently." AR 498. It appears Dr. Vigil's concerns were unfounded because the record contains no indication that Plaintiff received surgery or a definitive diagnosis related to the concerns Dr. Vigil raised.

Second, although certainly not a dispositive factor, the lack of any treatment or medication for urinary incontinence tends to undermine a conclusion that this condition was severe. Third, as set forth in more detail below, Dr. Vigil's opinion relates to Plaintiff's condition after the relevant time period and, as a result, its import on the time frame at issue is reduced. Fourth, it does not appear Dr. Vigil conducted any tests on Plaintiff or that he based his

---

[4] It is not clear from the records that this CT scan had anything to do with Plaintiff's claims of urinary incontinence. Nonetheless, the Court gives Plaintiff the benefit of the doubt and assumes it did.

conclusion on any objective criteria. Instead, it appears that his diagnosis is based on his interview of Plaintiff and, perhaps, the above-referenced records from Dr. Pentecost (which are the only other medical records concerning incontinence to which Plaintiff cites).

Fifth, the ALJ denied Plaintiff's post-hearing request to keep this matter open to receive an evaluation from Dr. Vigil. Therefore, Dr. Vigil's report was not part of the record before the ALJ. Thus, with regard to the process the ALJ followed in connection with Dr. Vigil's evaluation, Plaintiff cannot persuasively argue that the ALJ failed to consider matters in the record at the time the ALJ conducted his step two analysis.

In addition to records from Drs. Pentecost and Vigil, Plaintiff attempts to support his argument that his incontinence was a severe condition with his own self-serving statements. Doc. 22 at 2. As Defendant pointed out in her response, however, the ALJ found that the record did not support Plaintiff's testimony about his symptoms. Because, as the trier of fact, the ALJ is the individual optimally positioned to observe and assess witness credibility, the Court rarely disturbs an ALJ's credibility findings. *See Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991); *see also Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (ALJ credibility determinations are generally "binding upon review"). Plaintiff advances no challenge to the ALJ's credibility decision and the Court accordingly finds no reason to disturb the ALJ's finding on this point.

Rather than challenge the ALJ's credibility finding, Plaintiff instead seems to argue in his reply that the ALJ's credibility determination does not matter because SSR 85-28 states, "[a]t the second step of the sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." Doc. 22 at 3 (emphasis omitted). If medical evidence alone can be considered at step two, however, Plaintiff's

self-serving testimony, which is not medical evidence, cannot help establish severity for purposes of step two.

Moreover, even if the ALJ committed error at step two in determining that Plaintiff's urinary incontinence did not constitute a severe condition, this error would be harmless. In 2016, the Tenth Circuit made clear in two separate published opinions that "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman*, 813 F.3d at 1330; *see also Smith*, 821 F.3d at 1266-67 (same).

Plaintiff points out that *Allman* and *Smith* both involved situations in which the ALJ later considered the non-severe impairment at step four. Doc. 22 at 3. In making this procedural argument, however, Plaintiff overlooks the fact that Dr. Vigil's assessment of Plaintiff was not part of the record at the time the ALJ determined Plaintiff's RFC. Thus, the only medical records regarding Plaintiff's incontinence before the ALJ at step four were the records from Dr. Pentecost. These records only indicated that Plaintiff had issues with urinary incontinence at night. Therefore, while an ALJ must incorporate both severe and non-severe limitations into her RFC assessment, at the time the ALJ made this assessment there was no limitation regarding incontinence to incorporate into the RFC.

In sum, the Court concludes that the ALJ did not err in determining that Plaintiff's claimed incontinence did not constitute a severe impairment. Further, even if the ALJ did err at step two, the error was harmless because the ALJ found at least one other severe impairment and the record at the time the ALJ assessed Plaintiff's RFC did not require the ALJ to impose a limitation related to Plaintiff's claim of urinary incontinence.

B. Substantial Evidence Supports the ALJ's RFC

As noted above, Dr. Vigil's medical opinion was not part of the record before the ALJ. Plaintiff contends that "a proper evaluation of Dr. Vigil's medical opinion would have changed [Plaintiff's] RFC." Doc. 18 at 19-20. As Plaintiff noted, at the time he filed his motion, there was "some disagreement in the Tenth Circuit regarding the Appeals Council's discussion of new evidence from a medical source." Doc. 18 at 20. Specifically, at this time there were conflicting decisions related to whether the Appeals Council must articulate an analysis of new evidence when it denies a request for review. *Compare Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006) *with Harper v. Astrue*, 428 F. App'x 823, 827 (10th Cir. 2011) (unpublished). However, the Tenth Circuit's recent decision in *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017), appears to have put the matter to rest. .

In *Vallejo*, the plaintiff was unable to timely submit a report from her treating physician before the ALJ issued its decision denying the plaintiff's claim. *Id*. at 953. The plaintiff therefore submitted the opinion from her treating physician to the Appeals Council. *Id.* The treating physician opined that the plaintiff would be unable to work due to her functional limitations. *Id.* Although the Appeals Council ultimately denied the plaintiff's request for review, it did consider the newly submitted evidence. *Id.* The Appeals Council summarily stated that the new evidence did not provide a basis for changing the ALJ's decision. *Id.* The plaintiff then sought judicial review. *Id*. The district court concluded that the Appeals Council erred in not conducting a treating physician analysis in regard to the newly submitted evidence and remanded on that basis. *Id.* On appeal, however, the Tenth Circuit reversed. The Tenth Circuit held that if the Appeals Council denies review, it is not required to engage in a treating physician analysis. *Id.* at 955. In so holding, the Tenth Circuit explicitly stated that it declined to rely on the *Harper*

decision. *Id.* at 956, n. 3. Thus, pursuant to the Tenth Circuit's decision in *Vallejo*, the Appeals Council was not required to conduct an analysis of Dr. Vigil's opinion.

Given that the Appeals Council need not articulate an analysis of new evidence when it denies a request for review, the question arises as to whom, if anyone, must articulate an assessment of the new evidence. Given that the Appeals Council is not required to do so, should the district court send it back to the ALJ to weigh the new evidence and give good reasons for its allocation of weight? *See* 20 C.F.R. § 416.927(c); *Vallejo*, 849 F.3d at 955. *Vallejo* clearly says no. It explicitly "reject[ed] Vallejo's alternative argument that the district court's ultimate decision to remand the case to the Commissioner was the appropriate remedy . . . because without the fact-finder's evaluation of [the treating physician's] opinion, the court simply couldn't determine whether substantial evidence supports the Commissioner's decision." *Id.* at 956 (internal citations and quotation marks omitted). Instead, the Tenth Circuit made clear, "[t]he district court's only option was to conduct a substantial-evidence review by assessing the entire agency record, including the [treating physician's] never-before assessed opinion." *Id.*

No clear guidance, however, exists regarding how the district court should conduct a substantial evidence review when portions of the evidence have not been expressly analyzed below. When a medical opinion is part of the record before the ALJ, the ALJ is required to discuss what weight is assigned to each medical source opinion and why. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). When a "never-before assessed opinion" comes before the district court, should the district court engage in the same, or similar,

10

analysis? If it does, will it be stepping outside its lane and acting as a fact finder rather than a reviewing court? *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (in deciding whether ALJ's decision is supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching the decision, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.").

Clearly, when the record contains conflicting medical opinions, a district court cannot accurately determine whether substantial evidence exists to support an ALJ's decision without assessing the value of a contradictory never-before assessed opinion. This does not mean, however, that the district court acts as the ALJ or under the same constraints as the ALJ with regard to the never-before assessed opinion. The Court is unaware of any legal precedent suggesting that the guidelines an ALJ must follow in assessing what weight to give a medical opinion apply to the district court on review, even when the district court is tasked with assessing the impact of a never-before assessed medical opinion. Moreover, expanding the regulations that an ALJ must follow beyond the ALJ would conflict with the Tenth Circuit's guidance in *Vallejo* (where it did not require the Appeals Council to review never-before assessed opinions pursuant to the same regulations that apply to an ALJ) and would be inconsistent with the duties of the district court as a reviewing court.

The more logical course is for the district court to simply consider all of the evidence in the aggregate and then, with regard to the never-before assessed opinion, engage in the same type of substantial evidence review in which the district court normally engages to determine if the ALJ's ultimate conclusion constituted error. While the district court will not have the benefit of the ALJ's analysis with regard to never-before assessed evidence, this does not prevent the district court from engaging in a meaningful substantial evidence review of the entire record.

This Court recently had occasion to conduct such a review in *Yanni v. Colvin*, 2017 WL 3397382 (D.N.M. March 21, 2017), also a case where the Appeals Council declined to review a never-before assessed medical opinion. There, however, the doctor was a treating physician whose opinion conflicted with opinions of consultative examining physicians on which the ALJ had relied. *Id.* at *4-5. Reviewing the entire record, the Court determined that substantial evidence did not support the ALJ's decision and, therefore, remanded the case for further review.[5] *Id.*

The present situation is different. Here, for a number of reasons, the Court finds substantial evidence supports the ALJ's decision despite Dr. Vigil's opinion.

First, Dr. Vigil's assessment did not relate to the time period in question. Because the ALJ determined that Plaintiff was engaged in substantial gainful activity beginning on June 9, 2015, it is his condition during the disability period in question – prior to June 9, 2015 – that matters. Dr. Vigil did not conduct his consultative examination of Plaintiff until December 7, 2015. AR 28, 507. Dr. Vigil's assessment of Plaintiff's limitations on December 7th (after the disability period in question) does not necessarily mean that Plaintiff had these same limitations prior to June 9th (during the disability period in question). Dr. Vigil wrote his reports in the present tense and so, although he reviewed Plaintiff's past records, he appears to have assessed Plaintiff's condition on the date of the exam. It does not appear from a review of Dr. Vigil's records that he provided an opinion as to what limitations Plaintiff might have had prior to June 9, 2015.

Granted, as Plaintiff points out, the medical assessment forms Dr. Vigil completed instructed Dr. Vigil to "consider the patient's medical history and the chronicity of findings as

---

[5] The Court recognizes it stated in *Yanni* that, "the Court cannot meaningfully review the ALJ's decision absent analysis of the weight assigned to the treating physician's opinions." *Id.* at *5. Although the Court maintains that substantial evidence did not exist to support the ALJ's decision in *Yanni*, to the extent the Court indicated that a district court must necessarily remand a never-before assessed doctor's opinion for the ALJ to consider and weigh, this is contrary to *Vallejo* and incorrect.

from August 2012 to current examination." Doc. 22 at 5-6 (citing AR 501, 503-04). This instruction, however, does not make clear whether a doctor is to consider a patient's medical history in making an assessment about a claimant's current condition, or whether the doctor is to make an assessment about a claimant's condition during the entire timeframe. In this case, it appears that Dr. Vigil made assessments of Plaintiff's current, rather than past, condition. Further, the cases Plaintiff cites do not stand for the proposition that when doctors fill out forms with similar instructions, their assessments necessarily apply to the entire period of medical history the doctor is considering. Unlike Dr. Vigil, the doctor in *Alvarez v. Colvin*, 13 CV 393 MV/WPL, Doc. 27 at 8-10 (D.N.M. Oct. 31, 2014), treated the claimant on multiple occasions during the period at issue. Moreover, the court in *Alvarez* was addressing a totally different issue -- whether the Appeals Council erred in declining to consider evidence from the doctor during a certain time period. *Id*. The second case Plaintiff cites, *Rogoff v. Astrue*, 10 CV 1041 LAM, Doc. 27 at 5, 12-14 (D.N.M. Nov. 28, 2011), is also a non-binding decision that dealt with the assessment of a doctor who actually treated the claimant. As a result, even if the Court were inclined to follow these decisions, they do not lead to the conclusion that Dr. Vigil's December 7th assessment of Plaintiff spoke to Plaintiff's condition prior to June 9th.

Nonetheless, even if the Court assumed Dr. Vigil's assessed limitations applied to the past as well as the present, it would not change the result in this case. Although Dr. Vigil reviewed Plaintiff's medical records, the one-half hour he devoted to this task places him at a disadvantage compared to doctors who evaluated Plaintiff during the relevant time period. Dr. Vigil's conclusion that Plaintiff "is a poor historian and is [sic] difficult to ascertain what his primary disabling problem is" (AR 494) also makes it unlikely that Dr. Vigil gained reliable information from Plaintiff regarding his condition in the past.

The value of Dr. Vigil's opinion is also reduced because it ignores the fact that Plaintiff was actually working at the time Dr. Vigil made his assessments.[6] Dr. Vigil assessed Plaintiff as having marked limitations in a number of areas. Even though Plaintiff was working at the time, he argues that these limitations demonstrate that he cannot work. The inconsistency between Dr. Vigil's opinions and Plaintiff's concurrent work reduces the value of Dr. Vigil's assessments.

The Court further concludes that Dr. Vigil's opinion lacked support. With regard to assessments that relate to Plaintiff's mental capacity, Dr. Vigil's opinion has little impact on the overall record because, as Dr. Vigil noted, Plaintiff's "primary disabling complaints are chronic back pain, neck pain, bilateral arm and shoulder pain, and right leg pain. He also complains of bowel and bladder incontinence and multiple medical problems." AR 493. In other words, mental health issues were not even among Plaintiff's primary complaints at the time. Further, the condition of Plaintiff's mental health at the time of his examination with Dr. Vigil in December 2015 is not necessarily an indication of his mental health prior to June 2015.

With regard to Dr. Vigil's physical assessments, Dr. Vigil provides little, if any, support for his conclusions. His assessments are made in a summary check mark fashion and appear to derive primarily from Plaintiff's self-reported symptoms as opposed to objective medical evidence. Thus, Dr. Vigil's opinion has minimal impact on the evidence in the aggregate and does not undermine the opinions of the doctors on whom the ALJ relied in reaching her decision. Looking at the entire record, including Dr. Vigil's never-before assessed opinions, the Court

---

[6] Plaintiff asserts that his work in 2015 should be considered a trial work period. Doc. 18, at 16 n.13. Plaintiff does not, however, sufficiently raise this argument for it to be considered on appeal. *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (refusing to address issue raised on appeal that the claimant raised only perfunctorily below and which the district court deemed waived due to claimant's failure to present any developed argument); *See also Strickland v. Astrue*, 496 F. App'x 826, 835 (10th Cir. 2012) (declining to address one-sentence argument raised in opening brief)..

concludes that substantial evidence supports the Commissioner's determination of no disability in this case.

> C. The ALJ's Step Four Analysis Complies with the Relevant Legal Standards and is Supported by Substantial Evidence

Plaintiff's third and final argument is that the ALJ erred at each of the three step four phases (described above in section II(A)(4)) when she determined that Plaintiff could return to past relevant work. Doc. 18 at 23-26. Plaintiff's phase one argument shares the same foundation as his above argument that Dr. Vigil's testimony undercut the ALJ's RFC determination – Plaintiff asserts that Dr. Vigil's assessment requires a finding that Plaintiff is unable to work. Doc. 18 at 24. For the same reasons the Court rejected this argument above, the Court again rejects it now.

Under phase two, Plaintiff asserts that the ALJ erred because "she failed to develop the record with factual information concerning the demands of past work and whether Mr. Lopez can meet those demands." Doc. 18 at 24. As Defendant points out, however, the ALJ

> summariz[ed] the vocational expert's testimony about Plaintiff's past relevant work and display[ed] this information in a table listing the job description, *Dictionary of Occupational Titles* (DOT) number, exertional requirements, and skill requirements for each position. . . . The ALJ then defined past relevant work, summarized the vocational expert's testimony again, recited claimant's testimony about his past work, and concluded that Plaintiff's past relevant work included car sales retail and call center customer service positions.

Doc. 20 at 16-17. Tenth Circuit precedent demonstrates that, in doing so, the ALJ met her obligations at phase two.

In *Doyal v. Barnhart*, the Tenth Circuit stated that while "[i]t is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the vocational expert," the ALJ "may rely on information supplied by the VE at step four." 331 F.3d 758, 761 (10th Cir. 2003). Here, the vocational expert (VE) provided the exertional and skill

15

levels associated with Plaintiff's past relevant work as well as the *Dictionary of Occupational Titles* ("*DOT*") number associated with Plaintiff's work as a call center customer service employee. AR 71. The ALJ then incorporated this information into her decision, noting that this work was classified as sedentary. AR 35.

The only medically established limitations at issue in this phase two analysis are those contained in the ALJ's RFC. *See Wells v. Colvin*, 727 F.3d 1061, 1075 (10th Cir. 2013) (constraining phase two analysis to medically established limitations in RFC). Thus, the ALJ needed only to obtain enough information regarding these limitations to determine whether Plaintiff could perform his PRW as a call center customer service employee. *Id.* at 1075. The vocational expert advised the ALJ that work as a call center customer service employee is sedentary and semi-skilled with an SVP of 3.[7] AR 71. The Tenth Circuit's decision in *Wells v. Colvin*, indicates that, by obtaining this information, the ALJ fulfilled his obligation at phase two. 727 F.3d at 1075 ("[t]he ALJ questioned the VE concerning the bookkeeper job, and was told that it was a 'sedentary skilled occupation' at level six. Thus, the ALJ had sufficient information regarding the demands of [claimant's] bookkeeping job relevant to his RFC assessment, which included the full range of either light or sedentary work and featured no other specific mental or postural limitations. Furthermore, the ALJ made a sufficient finding concerning this issue when he stated that '[t]he claimant's past work of bookkeeper . . . [was] sedentary in exertional level." (internal citations omitted)).

Here, the ALJ obtained more than just information about Plaintiff's exertional level, however. The ALJ also relied on the *DOT* description of the position. "It is well established that

---

[7] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991), 1991 WL 688702 (G.P.O.)).

'the agency accepts the [definitions in the *Dictionary of Occupational Titles*] as reliable evidence at step four of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy." *Bowman v. Astrue*, 511 F.3d 1270, 1273 n.1 (10th Cir. 2008). Also offering support is the Tenth Circuit's decision in *Andrade*, where an ALJ used the *DOT* to determine that the claimant's PRW should be categorized as light even though the claimant's testimony regarding how he actually performed his work indicated a higher exertional rating. *Andrade v. Sec'y of Health & Human Svcs.*, 985 F.2d 1045, 1050-51 (10th Cir. 1993). The Tenth Circuit recognized that an "ALJ may rely on the [*DOT*'s] job description for claimant's job category as presumptively applicable to a claimant's prior work." *Id.* at 1051.

Unpublished Tenth Circuit cases further validate the notion that an ALJ's reliance on the *DOT*'s description of PRW or a VE's description of the exertional and skill level of PRW is sufficient to meet the ALJ's burden at phase two. *See Bales v. Colvin*, 576 F. App'x 792, 799-800 (10th Cir. 2014) (ALJ's notation of claimant's past jobs as unskilled positions performed at the light exertional level combined with VE's response to hypothetical questions sufficient to support finding that claimant able to perform her PRW as actually performed); *Best-Willie v. Colvin*, 514 F. App'x 728, 738 (10th Cir. 2013) (VE's testimony regarding exertional and skill levels of PRW and the ALJ's reliance on *DOT* descriptions of PRW supported finding that the "ALJ obtained information concerning the physical and mental demands of [claimant's] past relevant work and appropriately relied on the vocational expert's testimony in her decision"); *Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011). *But see Sissom v. Colvin*, 512 F. App'x 762, 769 (10th Cir. 2013) (reiteration of VE testimony regarding exertional and skill level of PRW insufficient to determine work demands of claimant's PRW).

Alternatively, in his reply, Plaintiff asserts that the ALJ committed error at phase two because she "did <u>not</u> consider medical evidence from Dr. Vigil concerning Mr. Lopez's limitations in meeting the requirements of past work . . . ." Doc. 22 at 8. This argument fails for at least two reasons. First, Plaintiff did not make this argument until his reply and has therefore waived it. *See Reitmayer v. Colvin*, 2016 WL 4460616, *13 (D. Kan. Aug. 24, 2016) (determining that claimant waived an issue by failing to present it in his opening brief and raising it for the first time in his reply brief); *Baca v. Berryhill*, 2017 WL 3585650, *14 (D.N.M. Mar. 31, 2017) (same). Second, evidence from Dr. Vigil was not part of the record at the time and so the ALJ could not have considered it.

With regard to phase three, Plaintiff argues that the ALJ's RFC, which limits Plaintiff to standing or walking for 4 hours of an 8 hour day, eliminates Plaintiff from his past relevant work in car sales retail, a job that requires standing or walking for approximately six hours of an eight hour work day. Doc. 18 at 25-26. While the Court agrees with Plaintiff, this does not end the inquiry because the ALJ also concluded that Plaintiff could perform his past relevant work as a call center customer service representative. This job is classified as sedentary and does not have a standing or walking requirement that is inconsistent with the RFC.

With regard to Plaintiff's work as a call center customer service representative, Plaintiff argues in his reply that the RFC does not include the need for frequent bathroom breaks or Plaintiff's inability to lift overhead due to rotator cuff syndrome of his left arm. Doc. 22 at 9. Plaintiff's argument regarding incontinence is unpersuasive because medical records do not establish that Plaintiff must take frequent bathroom breaks and, to the extent Plaintiff asserts that he must do so, the ALJ found Plaintiff not entirely reliable. With regard to Plaintiff's alleged rotator cuff syndrome, Plaintiff relies on a brief assessment Dr. Vigil made in December 2015.

Again, Dr. Vigil's assessment was not part of the record at the time the ALJ determined Plaintiff's RFC. As set forth above, numerous reasons exist to question the validity of Dr. Vigil's assessments. As a result, after considering this never-before assessed evidence in conjunction with all other evidence in the record, the Court concludes that substantial evidence exists to support the ALJ's determination of non-disability.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum (Doc. 18) is **DENIED** and the decision of the Commissioner denying Plaintiff benefits is **AFFIRMED**.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent